UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ALEECE REINICKE, | : | Case No. 3:19-cv-103 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Aleece Reinicke brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits in March 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Lloyd Hubler concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

After the Appeals Council denied Plaintiff's request for review, she filed a previous action in this Court. Upon the parties' joint stipulation to remand, United States District Judge Walter H. Rice remanded the case to the Commissioner for further proceedings. *Reinicke v. Comm'r of Soc. Sec.*, No. 3:16cv275, Doc. #10 (S.D. Ohio Dec.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

16, 2016).  The Appeals Council vacated ALJ Hubler's decision and remanded the case to ALJ Gregory G. Kenyon for resolution of several issues.  After a hearing, ALJ Kenyon found that Plaintiff was not under a disability and therefore not entitled to benefits.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), and the administrative record (Doc. #5).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

**II.     Background**

Plaintiff asserts that she has been under a "disability" since December 24, 2012.  She was thirty-two years old at that time and was therefore considered a "younger person" under Social Security Regulations.  *See* 20 C.F.R. § 404.1563(c).  She has a high school education.  *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #5, *PageID* #s 894-909); Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8); and Plaintiff's Reply (Doc. #9).  Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

**III.    Standard of Review**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v.*

*City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful employment during the period from her alleged onset date, December 24, 2012, through her date last insured, June 30, 2014.

Step 2: Through her date last insured, she had the severe impairments of fibromyalgia, degenerative disc disease of the lumbar spine, residuals of a left wrist fracture, a history of pseudo seizures, a bipolar type schizoaffective disorder, and an anxiety disorder.

Step 3: Through her date last insured, she did not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Through her last date insured, she had the residual functional capacity to perform "light work … except (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs[;] (2) no climbing of ladders, ropes and scaffolds[;] (3) no work around hazards such as unprotected heights or dangerous machinery[;] (4) no

4

     driving of automotive equipment[;] (5) frequent use of the upper extremities for handling and operating hand controls such as levers and switches[;] (6) limited to performing unskilled, simple, repetitive tasks[;] (7) occasional superficial contact with co-workers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading others or resolving conflicts)[;] (8) no public contact[;] (9) no fast paced production work or jobs which involve strict production quotas[;] (10) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

Step 4: Through her date last insured, she was unable to perform any of her past relevant work.

Step 5: Through her date last insured, she could perform a significant number of jobs that existed in the national economy.

(Doc. #5, *PageID* #s 894-909). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 909.

**V.**   **Discussion**

  Plaintiff contends that the ALJ erred in weighing her treating psychiatrist's opinion, the record-reviewing consultants' opinions, and the examining psychologist's opinion. Further, she asserts that the ALJ erred in excluding her service dog from his evaluation of her residual functional capacity. The Commissioner maintains that substantial evidence supports the ALJ's findings.

  **A.**   **Medical Opinions**

  Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians,

5

commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

Plaintiff's treating psychiatrist, Rafay Atiq, M.D., completed a mental impairment questionnaire in October 2013. (Doc. #5, *PageID* #s 687-90). He noted that he began treating Plaintiff in 2009 and saw her for follow-ups every two to four months and as

6

needed for crises. He diagnosed schizoaffective disorder. Her symptoms include a history of delusions or hallucinations, recurrent panic attacks, social withdrawal or isolation, and generalized persistent anxiety. He observed based on her course of treatment that she has relapses of psychosis with increased stress. Her response to treatment is fair but she "continues to have episodes of exacerbation … during times of [increased] stress." *Id.* at 688. Her prognosis is guarded. Further, she would be absent from work more than three times a month because of her impairments and/or treatment.

      Turning to her functional limitations, Dr. Atiq opined that Plaintiff has moderate restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace; and marked episodes of deterioration or decompensation in work. She has marked limitations in several functional areas including, for example, her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; and to respond appropriately to changes in the work setting. She was moderately limited in her ability to, for instance, understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; ask simple questions and request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; and set realistic goals or makes plans independently of others. Finally, she was slightly limited in her ability to remember locations and work-like procedures; understand, remember, and carry out simple

7

instructions; make simple work-related decisions; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

The ALJ assigned "little weight and not controlling weight" to Dr. Atiq's opinion. *Id.* at 907. The ALJ found that his "mixture of moderate to extreme level limitations in most areas of work related mental functioning" were not consistent with the findings in his medical notes. According to the ALJ, Dr. Atiq's notes "show a history of situational anxiety and depression related to external factors such as marital and financial stress, job loss, and a difficult relationship with her mother in law." *Id*. Further, the ALJ found that over the course of treatment, Plaintiff's mental status examinations were "largely normal for [a] majority of the time."

The ALJ's attempt to minimize Plaintiff's symptoms by concluding they were merely "situational anxiety and depression related to external factors" shows a lack of understanding of mental illnesses and is a medical opinion that he is not qualified to make. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) ("[A]n ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'") (quoting, in part, *Meece v. Barnhart,* 192 Fed Appx. 456, 465 (6th Cir. 2006)) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings")).

However, the ALJ is correct to the extent that Dr. Atiq noted that Plaintiff reported symptoms and external factors. For instance, in November 2015, Plaintiff indicated that

8

she was overwhelmed and stressed because of financial issues and was disappointed that she had recently been denied social security benefits. *Id.* at 1141. Further, she felt paranoid and suspicious. *Id*. Dr. Atiq observed that she was restless, anxious, and irritable. She had soft and slow speech and a constricted labile affect. She was experiencing paranoia and visual hallucinations at night. *Id.* at 1143. She had limited insight. *Id.* at 1144. Yet, notably, Dr. Atiq does not suggest in his treatment notes or his opinion that these symptoms were merely the result of "external factors." Instead, he diagnosed schizoaffective disorder, bipolar type. *Id*.

"Schizoaffective disorder is a mental health disorder that is marked by a combination of schizophrenia symptoms, such as hallucinations or delusions, and mood disorder symptoms, such as depression or mania." *Schizoaffective Disorder*, MAYO CLINIC https://www.mayoclinic.org/diseases-conditions/schizoaffective-disorder/symptoms-causes/syc-20354504 (last updated Nov. 9, 2019). The bipolar type of schizoaffective disorder "includes episodes of mania and sometimes major depression." *Id.* Further, "[f]actors that increase the risk of developing schizoaffective disorder include: … Stressful events that may trigger symptoms." *Id.*; *see also Schizoaffective Disorder*, NAT'L ALLIANCE ON MENTAL ILLNESS, https://www.nami.org/About-Mental-Illness/Mental-Health-Conditions/Schizoaffective-Disorder (Although the cause of schizoaffective disorder is unknown, "Stressful events such as a death in the family, end of a marriage or loss of a job can trigger symptoms or an onset of the illness.").

The ALJ discounted Dr. Atiq's opinions because Plaintiff's depression was in "full

9

remission" in April 2015. Indeed, in April 2015, Dr. Atiq noted that Plaintiff reported giving birth eight weeks before. He further indicated that her psychosis was in full remission. (Doc. #5, *PageID* #884). But, as Plaintiff correctly notes, her symptoms returned in November 2015. As described in more detail above, Dr. Atiq indicated that Plaintiff felt paranoid and suspicious. *Id.* at 1141. She was having visual hallucinations at night. *Id.* at 1143. He observed that she was restless, anxious, and irritable. She had soft and slow speech and a constricted labile affect.

      In addition, the ALJ discounted Dr. Atiq's opinion because there was no evidence of psychological hospitalizations or the need for Plaintiff to be in a highly supportive living arrangement. Although the ALJ is correct, it is not clear from the ALJ's decision how this detracts Dr. Atiq's opinion as he did not indicate that she had been hospitalized or needed a highly supportive living arrangement. Accordingly, this does not constitute a good reason to reject Dr. Atiq's opinions.

      The ALJ initially referred to Dr. Atiq as Plaintiff's "treating family physician," he later noted that he "considered the medical specialty of Dr. Atiq." The parties dispute whether the ALJ adequately considered Dr. Atiq's specialty. Given his failure to mention Dr. Atiq's specialty, it cannot be said that the ALJ properly considered and credited Dr. Atiq as Plaintiff's treating psychiatrist. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

      The ALJ also indicated that he considered "the examining and personally treating relationships of several years with the claimant, the frequency of treatment, testing and

treatment of the claimant." (Doc. #5, *PageID* #907). But the ALJ does not provide any further detail. He does not, for instance, recognize that Dr. Atiq's began treating Plaintiff in July 2009 and saw her regularly for the next several years. *Id.* at 789. For instance, he saw her three times in 2009; four times in 2010; six times in 2011; and eleven times in 2012. *Id.* at 712-92; *see* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.").

The ALJ also "noted that Dr. Atiq lacked Social Security disability program proficiency, he lacked experience in evaluating Social Security disability cases, and he lacked the degree of objectivity of the independent medical experts." (Doc. #5, *PageID* #907). Plaintiff points out that the record does not indicate whether Dr. Atiq lacked Social Security program proficiency, experience in evaluating cases, or the degree of objectivity of the independent medical experts. According to Plaintiff, "ALJ Kenyon was not allowed to wield an unsubstantiated presumption that Dr. Atiq has no such familiarity, history, or experience as a club to bludgeon the psychiatrist's conclusions." (Doc. #6, *PageID* #1342). Plaintiff is correct that the record does not indicate whether Dr. Atiq lacked Social Security disability knowledge and experience.

The ALJ provided reasons for rejecting Dr. Atiq's opinions. However, substantial evidence does not support the ALJ's reasons and thus, they do not constitute "good

11

reasons" for rejecting his opinion. "The failure to provide 'good reasons' for not giving [a treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (citing *Wilson,* 378 F.3d at 544).

In comparison to the "little weight" the ALJ assigned Dr. Atiq's opinions, he assigned "moderate weight" to the record-reviewing psychologists' opinion. (Doc. #5, *PageID* #898). The ALJ explained that he assigned them "moderate weight because of their medical specialties, Social Security disability programs expertise, and extensive experience evaluating Social Security disability cases." *Id.* He found their proposed limitations for "superficial social contact and limited workplace change are well supported by the evidence of record …" and thus, he adopted them in his residual functional capacity assessment. *Id.*

Similarly, the ALJ assigned "partial weight" to the opinions of examining consultant Alan R. Boerger, Ph.D., "because of his medical specialty, specialized Social Security disability program knowledge, and extensive experience performing independent non-treating, objective medical examinations of Social Security disability claimants, and the fact that he personally examined the claimant."

The ALJ erred by failing to apply the same level of scrutiny to reviewing psychologists' opinions and examining psychologist's opinion as he applied to treating source's opinion. *See Gayheart,* 710 F.3d at 379 (citing 20 C.F.R. § 404.1527(c); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (July 2, 1996)) ("A more rigorous scrutiny of the

treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires."). The ALJ's reasons for assigning moderate/partial weight to their opinions focus on the consultants themselves rather than their opinions. And, although those reasons are certainly relevant, they do not explain why the ALJ gave the consultants' opinions more weight than he gave Plaintiff's treating psychiatrist. By comparison, the ALJ failed to correctly identify Dr. Atiq's specialty. Likewise, the ALJ credited Dr. Boerger's opinion because he met with Plaintiff once. Yet the ALJ only references Dr. Atiq's extensive treatment record with Plaintiff with no further explanation.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

13

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Aleece Reinicke was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

May 4, 2020

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).